**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

| | |
|---|---|
| LAPEER AVIATION, INC., *et al*. | Case No. 21-31500 |
| | Jointly Administered |
| Debtors. | Chapter 11 |
| _____/ | Hon. Joel D. Applebaum |

## OPINION DENYING CONFIRMATION OF DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION FILED UNDER SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE

This matter is before the Court on the proposed confirmation of Debtors' Second Amended Plan of Reorganization filed under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Plan"). The Court has considered the requirements for confirmation of a chapter 11 plan, along with the objections to confirmation filed by Carl Jennings, Christopher Lewis, Ron Keil and Betty Keil (the "Objecting Creditors") and the objection of Mayfield Township ("Mayfield").[1] For the reasons set forth below, confirmation of Debtors' Plan is DENIED.

---

[1] The objection of Ron and Brenda Hurst to the Plan was resolved by Order dated August 29, 2022 (Dkt. No. 220). Certain objections of Ron and Betty Keil were similarly resolved by Order dated April 19, 2022 (Dkt. No. 120).

# I.

## FACTUAL BACKGROUND

Debtor Lapeer Aviation operates the DuPont-Lapeer Airport pursuant to various operating and management agreements.[2] Lapeer Aviation derives its revenue from the operation of the Airport, a flight school that it operates on the airport premises, and from the sale, installation and servicing of avionics equipment. Gene Kopczyk is the President of Lapeer Aviation.

CG Acquisitions, LLC is a limited liability corporation which holds all of the stock of Lapeer Aviation. The sole member of CG Acquisitions is Gene Kopczyk.[3]

---

[2] On August 17, 2022, the Court allowed Lapeer Aviation to assume the Management Agreement and Operating Agreement, among other agreements, that Lapeer Aviation entered into with Mayfield in 2019. As a result of the assumption of these contracts, all of the objections of the Mayfield to the Plan were resolved with the exception of feasibility, an objection also raised by the Objecting Parties and discussed *infra*.

[3] Prior to the filing of the bankruptcies, Gene Kopczyk and Christopher Lewis each held 50% of the membership interests in CG Acquisitions. Christopher Lewis subsequently assigned all of his membership interests to Carl Jennings. On December 22, 2021, the Objecting Creditors moved to dismiss Debtors' bankruptcy, arguing that Gene Kopczyk, President and equity security holder of CG Acquisitions, lacked authority to place Debtors in bankruptcy without Carl Jennings' consent. On January 28, 2022, the Court determined, among other things, that Mr. Jennings' interest is limited to that of an assignee of a member of CG Acquisitions with no right to manage or control Debtors. *See* M.C.L. § 450.4505. Consequently, Mr. Kopczyk, as sole remaining member of CG Acquisitions, had the requisite authority to place Debtors into bankruptcy and the Court denied the motion to dismiss. The Objecting Creditors have sought leave to appeal this ruling.

On November 5, 2021 and on November 9, 2021, Lapeer Aviation, Inc. and CG Acquisitions, LLC (collectively "Debtors") respectively filed their separate Chapter 11 petitions under Title 11, Chapter 11, subchapter V of the United States Bankruptcy Code. On January 11, 2022, the Court entered an order allowing for the joint administration of the two cases.

On February 3, 2022, Debtors timely filed their joint Subchapter V Plan of Reorganization. The Plan was premised on the contribution of all of Lapeer Aviation's net disposable income for five years plus the proceeds, if any, of allegedly valuable litigation claims.

The following creditors filed objections to confirmation of the Plan: Carl Jennings, Christopher Lewis, Ron Keil and Betty Keil (collectively, the "Objecting Creditors") (Doc. 75, February 24, 2022); Mayfield Township (Doc. 77, February 25, 2022); and Ronnie and Brenda Hurst (the "Hursts") (Doc. 128, May 4, 2022).[4]

Approximately three weeks prior to the start of the confirmation hearing, Debtors filed their First Amended Plan (Dkt. No. 191) to modify the Plan's release and exculpation provisions and thereby satisfy the concerns of the United States Trustee. On the morning of the start of the confirmation hearing, Debtors filed the Plan (Dkt. No. 216), to bring current certain financial information contained in the Plan.

---

[4] *See* footnotes 1 and 2.

On August 29, 2022 and continuing on August 30, 2022, the Court held an evidentiary hearing on Plan confirmation and the Objecting Parties' remaining objections. At this hearing, the following witnesses testified: Gene Kopczyk, President of Lapeer Aviation; Sandy Swientoniowski, Acting Airport Manager for Lapeer Aviation; Matt Jonatzke, Lapeer Aviation's Avionics Sales Manager; Charles Mouranie, the Subchapter V Trustee; Clark Kent, Lapeer Aviation's former accountant; Chris Lewis, former member of CG Acquisitions; and Richard Nash, former attorney for Lapeer Aviation.

On September 23, 2022, Debtors and the Objecting Creditors filed post-hearing briefs. In their post-hearing brief, the Objecting Creditors raise objections to confirmation on the grounds that Debtors' Second Amended Plan is not feasible and was not filed in good faith as is required under 11 U.S.C. § 1191(b), incorporating § 1129(a)(3) and § 1129(a)(11).

On September 30, 2022, the Objecting Creditors and Debtors filed their post-hearing reply briefs and Debtors filed amended monthly operating reports for November 2021 through and including August 2022.

4

## ANALYSIS

### A. Law with Respect to Confirmation under Subchapter V

In 2019, Congress enacted the Small Business Reorganization Act (the "SBRA") to streamline the bankruptcy process for small businesses debtors, providing a cost-effective path to reorganization. *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 339–41 (Bankr. S.D. Fla. 2020). The SBRA is codified at 11 U.S.C. § 1181 et seq.

Section 1191 sets forth the rules for confirmation in a Subchapter V case. If the Subchapter V debtor cannot obtain full consent for the plan (i.e. one or more impaired classes of claims or interests rejects the plan), then § 1191(b) states that the court shall confirm a Subchapter V plan that satisfies the confirmation requirements, other than the requirements of § 1129(a)(8) (providing that all classes vote to accept the plan or not be impaired by the plan), § 1129(a)(10) (requiring at least one impaired class to accept the plan), and § 1129(a)(15) (requiring payment of unsecured creditors in full or devoting allocated projected disposable income to the plan), so long as the plan does not discriminate unfairly against any impaired, non-consenting class and is fair and equitable regarding each class of impaired claims or

interests that has rejected the plan.[5] *In re Pearl Resources, LLC*, 622 B.R. 236, 251–52 (Bankr. S.D. Tex. 2020). Because this case is not fully consensual, § 1191(b) applies.

Debtors have the burden of proving by a preponderance of the evidence that the applicable provisions of the Bankruptcy Code have been met. *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 459-460 (Bankr. S.D. Ohio 2011). The Court has an independent duty to determine compliance with each of the Bankruptcy Code's confirmation requirements. *Id*. at 458-459. Importantly, this is true even for those confirmation requirements that are not the subject of an objection. *Id*.

In this case, the parties have agreed, and the Court has independently verified, that *most* of the applicable elements of 11 U.S.C. § 1129(a) have been met. The Objecting Creditors assert, however, that the Plan has *not* been filed in good faith as required by § 1129(a)(3) and the Plan is *not* feasible as required by §1129(a)(11).

---

[5] Section 1191(b) provides:

> (b) Exception.--Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Mayfield Township joins in this latter objection. Independently, this Court finds that there is an issue as to whether the Plan meets the "best-interest-of-the-creditors test" found in §1129(a)(7). In light of these remaining objections and the Court's own concerns, the Court must make three determinations: (i) whether the requirements of § 1129 have been met, specifically § 1129(a)(3), (a)(7), and (a)(11); (ii) whether the plan unfairly discriminates against any impaired, non-consenting class; and (iii) whether the plan is fair and equitable.

**B. Disputed Requirements for Confirmation.**

   1. Is the Plan Proposed in Good Faith as Required under § 1129(a)(3)?

Pursuant to § 1129(a)(3), a plan must have "been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the Bankruptcy Code does not define the term "good faith," the Sixth Circuit has held that "§ 1129(a)(3) expressly requires an inquiry into the debtor's motives in proposing the plan ...." *In re Murray Metallurgical Coal Holdings, LLC,* 623 B.R. 444, 518 (Bankr. S.D. Ohio 2021) *citing Village Green I, GP v. Fed. Nat'l Mortg. Ass'n (In re Village Green I, GP)*, 811 F.3d 816, 819 (6th Cir. 2016). "[T]he important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *see also, Trenton Ridge*, 461 B.R. at 468. "Two primary purposes of chapter 11 relief are the preservation of

businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims." *Trenton Ridge*, 461 B.R. at 469 (citations omitted). In assessing whether a debtor proposed its plan in order to achieve a result consistent with the purposes of the Bankruptcy Code, a court must examine the totality of the circumstances. *See Trenton Ridge*, 461 B.R. at 468–69; *In re Griswold Building*, 420 B.R. 666, 708 (Bankr. E.D. Mich. 2009). "A debtor's plan may satisfy the good faith requirement even though the plan may not be one which the creditors would themselves design and may not be confirmable." *Pearl Res*., 662 B.R. at 260.

There are no cases in the Sixth Circuit which discuss the good faith requirement under § 1129(a)(3) in the context of a Subchapter V case. Cases from other jurisdictions, however, do not alter the standard for Subchapter V cases from the standard applied in chapter 11 cases generally. *See e.g., Pearl Res*., 662 B.R. at 260 (under Subchapter V "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied.")

Considering the totality of the circumstances in this case, this Court finds that Debtors have established by a preponderance of the evidence that they filed the Plan as part of their efforts to preserve their businesses as going concerns and to maximize the value of their estates. Debtor's president, Gene Kopczyk, testified that his reason for filing bankruptcy was to reorganize and save the companies. Mr. Kopczyk

testified at length regarding the poor financial condition of Lapeer Aviation at the time it was purchased by CG Acquisitions, the impact the various litigation was having on the company, the unsuccessful efforts to resolve that litigation through mediation and arbitration, and the fact that Lapeer Aviation could not survive financially if the litigation continued and an operational restructuring did not occur. The Objecting Creditors disputed Mr. Kopczyk's conclusions but did not present any evidence to the contrary. The Court, therefore, is left with the firm conviction that this case was filed to restructure Lapeer Aviation, thereby preserving jobs for employees and value for creditors. Accordingly, this Court finds that Debtors have proposed the Plan in good faith.

The Objecting Creditors raised two arguments as to why Debtors' Plan was not filed in good faith. [6] First, the Objecting Creditors argue that the Plan was not filed in good faith because Lapeer Aviation did not provide accurate financial disclosures in its monthly operating reports. This Court agrees that the monthly

---

[6] The Objecting Creditors also identified two other grounds in their post-hearing brief to support a finding of bad faith which are *not* addressed in this section of this Opinion: (i) Debtors' plan discriminates unfairly because Debtor's plan proposes to force a buy-back of creditor Jennings' membership interest in CG Acquisitions for $15,000; and (ii) Debtor's plan undervalues the state court lawsuits. The Court believes that these issues are more appropriately addressed in the "unfair discrimination" and "best interest of creditors" portion of this Opinion, *infra*.

operating reports initially filed by Gene Kopczyk were neither entirely accurate nor complete. Nevertheless, the Debtors readily provided Debtors' complete financial records to the Subchapter V Trustee, Charles Mouranie, for his review. Mr. Mouranie, a seasoned financial consultant with decades of experience assisting troubled companies, testified that the Debtors were cooperative and responsive in providing the source documents containing the financial information he needed to prepare his 13 week cash flow and the projections which form the basis of the Plan. The monthly operating reports played no role in Mr. Mouranie's formulation of the Plan's financial projections and, in any event, those monthly operating reports have now been amended and corrected. This Court does not believe the inaccurate monthly operating reports were filed in an effort to mislead Debtors' creditors or the Court. Moreover, those monthly operating reports, while certainly imperfect, generally complied with the reporting requirements found in 11 U.S.C. § 308.

Second, the Objecting Creditors argue that the Plan was not proposed in good faith because Gene Kopczyk manufactured for himself an unsecured claim in the amount of $321,000 against Lapeer Aviation on the eve of bankruptcy comprised of (i) monies paid for legal representation of Mr. Kopczyk, individually and (ii) monies Mr. Kopczyk paid to H&M Air on behalf of Debtors which were not yet due.

Several witnesses testified concerning Mr. Kopczyk's claim, including Mr. Kopcyzk, Mr. Lewis, and Mr. Nash. This Court finds Mr. Kopczyk had at least

colorable arguments for asserting the claim, including reliance on indemnification language in the applicable agreements and monies actually paid for or on behalf of Lapeer Aviation in connection with the litigation, among other arguments. While the ultimate determination of the amount, if any, actually due to Mr. Kopczyk may be addressed at some later date in connection with the claims-objection process, the assertion of this claim, in and of itself, does not evidence that this case was filed in bad faith.

2. Is the Best Interests of the Creditors Test met under § 1129(a)(7)?

Section 1129(a)(7), commonly known as the "best-interests-of-creditors test," requires that each impaired class of creditors either unanimously accept the plan or each creditor or interest holder receive under the plan at least what such holder would receive under a chapter 7 liquidation. *Trenton Ridge*, 461 B.R. at 474. Section 1129(a)(7) states: With respect to each impaired class of claims or interests--

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;

In this case, Debtors' liquidation analysis (Dkt. No. 62-1) identifies 5 claims/lawsuits against J.G.M. Transportation, Mayfield Township, Chris Lewis,

Carl Jennings and Ron and Betty Keils, all of which are listed in the amount of "unknown." Mr. Kopczyk testified that these claims are valuable and, if successful, could bring substantial sums into Lapeer Aviation's bankruptcy estate. During the confirmation hearing, Mr. Kopczyk opined that the breach of fiduciary duty claim against Mr. Lewis could be worth $300,000, the tortious interference claims against Carl Jennings could be worth $500,000, and the breach of contract claims against Mayfield Township could be worth $1,000,000 to $1,500,000. Any one of these lawsuits, if they result in a recovery at or near Mr. Kopczyk's estimates, would exceed the amount of net disposable income projected to be distributed pursuant to the Plan. To satisfy the best interest of creditors test, and to ensure that each creditor or interest holder receive under the plan at least what such creditor or interest holder would receive in a chapter 7 liquidation, the Plan states, at section 2.4.2(j):

> …Should Debtors elect to pursue these Causes of Action after confirmation of the Plan, the Debtors have devoted the net proceeds from these Causes of Action towards the payment of up to 100% of Allowed Unsecured Claims as set forth herein. Further, it is assumed that a Chapter 7 trustee is very likely to abandon these Causes of Action as a result of the time-consuming litigation which would be required to recover and the uncertainty associated with collection. Accordingly, the Debtors have assumed that these Causes of Action are more valuable to Beneficiaries if administered under this Plan as compared to a liquidation.

Given Mr. Kopczyk's testimony that these claims are valuable, the Court cannot simply assume that "a Chapter 7 trustee is very likely to abandon these Causes of Action as a result of the time-consuming litigation which would be

required to recover and the uncertainty associated with collection." Rather, the Court must assume that a Chapter 7 trustee will properly exercise his or her fiduciary duties. Because Mr. Kopczyk testified that these claims are valuable, the Court takes him at his word and the "best-interests-of-creditors test" requires that they be pursued. The Plan, however, provides no assurances that Debtors will continue to pursue these claims. If Debtors have the sole, unfettered right to simply abandon these claims without creditor or Court approval, the promise to contribute these litigation proceeds as part of the Plan is largely illusory. The Plan must, therefore, include provisions requiring Debtors to pursue those causes of action or granting other interested parties derivative standing to pursue those lawsuits should Debtors choose not to pursue them. Moreover, the Plan must provide for Debtors or other interested parties to seek Court approval if they wish to settle or abandon those claims. Without such provisions, this Court cannot find that Creditors *will receive* as much as they would have received in a chapter 7 and, accordingly, the "best-interest-of-the-creditors" test has not been met.

  3.  Is the Plan Feasible as Required under § 1129(a)(11)?

Section 1129(a)(11) establishes a feasibility requirement for Chapter 11 plans. Section 1129(a)(11) states:

> the court shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor

13

under the plan, unless such liquidation or reorganization is proposed in the plan.

Under Subchapter V, a "court must make a specific finding as to feasibility after engaging in a peculiarly fact intensive inquiry that involves a case-by-case analysis, using as a backdrop the relatively low parameters articulated in the statute." *Pearl Res.,* 622 B.R. at 263. A feasibility determination "must be firmly rooted in predictions based on objective fact," showing that "the plan offers a reasonable assurance of success." *In re Cheerview Enters.*, 586 B.R. 881, 903 (Bankr. E.D. Mich. 2018)(citations omitted). The plan need not guarantee success but "'must provide a realistic and workable framework for reorganization', rather than 'visionary promises.'" *Id*; *See also, In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003). There is no requirement in Chapter 11 that it be absolutely certain that a debtor can perform as projected. However, a reasonable assurance of commercial viability is required. *In re St. James Nursing & Physical Rehab. Ctr., Inc.*, 559 B.R. 186, 190–91 (Bankr. E.D. Mich. 2016). *But see In re Zaruba*, 384 B.R. 254, 257-60 (Bankr, D. Ak. 2008)(plan not feasible because a successful plan required agreement between debtors and judgment creditor and such agreement was unlikely given the animosity between the parties and the non-specific standards upon which to base an agreement). Debtor must show by a preponderance of the evidence that the plan is not likely to fail. *Cheerview Enters.*, 586 B.R. at 902.

In this case, this Court finds that the evidence presented supports a finding that the Plan is feasible. This Court finds compelling the projections prepared by Charles Mouranie, the Subchapter V Trustee. Mr. Mouranie, a qualified financial advisor with extensive experience, testified that he reviewed all of the necessary source financial information from Lapeer Aviation to model a 13 week rolling cash flow inclusive of all income and expenses. He further testified that his Plan projections are based upon this cash flow forecast, and that these projections are realistic and achievable. Based upon Lapeer Aviation's performance during the case, Mr. Mouranie testified that he believes Lapeer Aviation can perform as projected. Sandy Swientoniowski, the Debtor's bookkeeper, confirmed Mr. Mouranie's testimony that the projections accurately account for all of the income and expenses of Lapeer Aviation. Matt Jonatzke, the avionics sales manager, testified that Lapeer Aviation's sales and servicing of avionics equipment are increasing and Lapeer Aviation is on track to receive the Garmin Silver Award for sales for 2022. And, as noted above, Mr. Kopczyk testified that Lapeer Aviation holds multiple causes of action which he believes will bring significant assets into the estate. Taken together, this testimony establishes that the Plan is firmly rooted in predictions based on objective fact and offers a reasonable assurance of success. That is all that is required under the Code.

15

The Objecting Creditors' make two arguments regarding feasibility of the Plan. First, the Objecting Creditors argue that the Plan is not feasible because the Management and Operating Agreements expire prior to the completion of the Plan.[7] Specifically, Lapeer Aviation's Management and Operating Agreements expire in September 2024, but Debtors' Plan does not end until 2027. Because there are no assurances that Lapeer Aviation will continue to operate as airport manager of the DuPont-Lapeer Airport and be able to maintain its flight school and avionics business there after the pertinent agreements expire, the Objecting Creditors argue that Debtors cannot show that the Plan is feasible throughout the entire Plan period.

This Court does not find this argument persuasive. Mayfield Township's counsel represented to the Court during the hearing that contracts at the DuPont-Lapeer Airport would be open for bids at the end of their terms. Mayfield Township has not indicated that it would refuse to entertain Lapeer Aviation's bid. To the contrary, counsel confirmed that Lapeer Aviation would be able to bid for the contracts. Moreover, this Court understands that Mayfield Township will undertake an objective bidding process which ensures fair consideration of all bidders.[8] Given its position as the current operator, Lapeer Aviation is uniquely situated to bid on these contracts. The fact that a lease may expire during the course of a plan does not

---

[7] Mayfield Township joins in this objection.
[8] This includes a debtor in bankruptcy. *See* 11 U.S.C. § 525.

render a plan unfeasible because a plan remains feasible even if a possibility of failure is shown. *St. James Nursing*, 559 B.R. at 191. Commercial debtors often do not know with absolute certainty that they will be able to continue operations when their leases or operating agreements expire and the Objecting Creditors have not shown that it is more likely than not that Lapeer Aviation will be unable to renew its agreements. All that is required is a reasonable assurance of success. The Court is satisfied that showing has been made in this case.[9]

Second, the Objecting Creditors argue that the Plan is not feasible because a portion of the income used to fund the Plan is tied to flight school operations, and the flight school is currently unlicensed and cannot continue to operate in violation of Michigan law. This Court rejects this argument because the licensing issue, to the extent it still exists, is easily resolvable. Obtaining a license requires a copy of the commercial operating agreement with the airport and the airport manager's signature. This Court previously affirmed the validity of Lapeer Aviation's commercial operating agreement with Mayfield Township, and Sandy Swientoniowski, the airport manager, testified she is willing to sign the application. The Court is disinclined to deny confirmation on this ground when the only reason the flight school license was delayed was because the former airport manager (who

---

[9] Mr. Kopczyk also testified that, if necessary, Lapeer Aviation can continue its flight school and avionics businesses at an alternative, albeit undisclosed, location.

also happens to be the father of Objecting Creditor Christopher Lewis) was unwilling to sign the flight school license.

This Court also finds irrelevant the issue of the company that operates the flight school. Mr. Kopczyk testified that the flight school's revenue would be committed to the Plan. This was undisputed. So long as the flight school income is committed to the Plan, the issue of which entity runs the flight school is not relevant to confirmation.[10]

### 4. Does the Plan Unfairly Discriminate?

The term "unfair discrimination" is not defined in the Bankruptcy Code. However, "the purpose of the requirement is to ensure that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re CE Elec. Contractors, LLC*, No. 21-20211 (JJT), 2022 WL 1420094, at *3 (Bankr D. Conn., May 4, 2022) *citing In re LightSquared, Inc*., 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014)(citations omitted).

Courts have developed various tests to determine whether there has been unfair discrimination. *In re Crosscreek Apartments, Ltd*., 213 B.R. 521, 537 (Bankr.

---

[10] Debtors argue that the Objecting Creditors waived this licensing issue because it was not raised in their written objection to confirmation (Dkt. No. 75) citing *In re Collins & Aikman Corp.*, 417 B.R. 449, 453 (E.D. Mich. 2009). The *Collins & Aikman* ruling was decided in a different procedural context and does not apply to the facts of this case. Rather, this Court has an independent obligation to make sure that the required elements of reorganization have been met. *Trenton Ridge*, 461 B.R. at 458-459.

E.D. Tenn. 1997). The "Markell test," is generally followed by courts in the Sixth Circuit. This test was first articulated in an article by Hon. Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L. J. 227 (1998) and adopted by the Judge Spector in the *Dow Corning* case. Under this approach,

> a rebuttable presumption that a plan is unfairly discriminatory will arise when there is:
>
> > (1) [A] dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution."

*In re Dow Corning Corp.*, 244 B.R. 705, 710 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002). *See also*, *In re Mallinckrodt PLC*, 639 B.R. 837, 898-99 (D. Del. 2022) (applying Markell test).

The two classes at issue here are Class VI and Class VIII, both of which are comprised of one equity security holder. Class VI is comprised of the Claim of Interest in CG Acquisitions held by Gene Kopczyk and Class VIII is comprised of the Claim of Interest in CG Acquisitions held by Carl Jennings as assignee of Chris Lewis' membership interests. Despite both classes being comprised of equity security holders, the Class VI claim holder, Gene Kopczyk, is permitted to retain his

Allowed Interests in CG Acquisitions while Class VIII *requires* that Carl Jennings relinquish his membership interest in CG Acquisitions upon a cash payment of $15,000.

This Court finds that Mr. Jennings has met factors (1) and (2) of the Markell test because Mr. Jennings (the sole member of Class VIII) rejected his Plan treatment and because there is another class of equity holders in CG Acquisitions, found in Class VI which is being treated differently from him. The only difference between the two classes is that Class VI equity has management and control rights over the Debtors and Class VIII does not.

This Court also finds that the third factor of the Markell test is met because the difference in the Plan's treatment of the two classes has the potential to result in a materially lower percentage recovery for Mr. Jennings. The Plan *requires* Carl Jennings to accept $15,000 for his equity. However, in light of the Plan projections, Carl Jennings' interest may be undervalued, perhaps significantly. Debtors' Plan outlines a path to a successful reorganization leading to a profitable company. As an equity security holder by virtue of the assignment of Chris Lewis' membership interests, Mr. Jennings may be entitled to reap the rewards of holding that interest. In addition, Debtors' Plan includes an Amended Liquidation Analysis which identifies state court lawsuits against Carl Jennings (including JGM Transportation), Chris Lewis, Mayfield Township and Ron and Betty Keil. Gene Kopczyk testified

that he expects to recover approximately $2 million from those suits. If Carl Jennings is stripped of his membership interest he will be deprived of any recovery from those suits. The discriminatory treatment afforded to Jennings is, therefore, unfair.

Debtors raise three arguments in support of their position that the Plan does not unfairly discriminate against Carl Jennings. First, Debtors argue that Mr. Jennings did not raise the issue of discrimination in the Objecting Creditors' objection to confirmation and, therefore, this objection has now been waived. While it is true that Creditors did not raise this argument, this Court is bound by the statute and cannot confirm a plan which unfairly discriminates between similarly situated classes. *Trenton Ridge,* 461 B.R. at 458-459. Moreover, during closing arguments, the Court specifically requested the parties to address this issue in their post-hearing briefs.

Second, Debtors argue that, while there is discrimination between the classes of equity security holders, the bankruptcy code permits discrimination in the treatment of classes of claims; it only prohibits *unfair* discrimination. *In re City of Detroit*, 524 B.R. 147, 255 (Bankr. E.D. Mich. 2014). Debtors argue that there are very valid reasons for discriminating between the equity classes because Gene Kopczyk has management and control over the Debtors, whereas Carl Jennings has been consistently attempting to undermine the reorganization of the Debtors by

moving to have the cases dismissed, attempting to have Lapeer Aviation's debts found to be non-dischargeable, and seeking to have Lapeer Aviation's contracts cancelled. This Court does not find this argument compelling. Asserting colorable legal positions during a case is seldom, if ever, grounds for discriminating between substantially similar classes. The Court previously ruled that Carl Jennings has absolutely no management or control rights over CG Acquisitions or Lapeer Aviation; he only has the right to receive distributions on his share of the equity assigned to him by Chris Lewis. *See* M.C.L. § 450.4505. If Mr. Jennings seeks to interfere in the operations or management of Debtors, there are Code-based remedies available. In light of these alternative remedies, the proposed discriminatory Plan treatment cannot be said to be fair.

Third, Debtors argue that Carl Jennings must accept $15,000 as fair value for his assigned membership interests as of the effective date of the plan. There was no credible testimony regarding the value of the retained equity interests and Debtors did not provide any legal support of their position that this Court may force a sale of Carl Jennings' equity interest without any consideration of what those interests may be worth after Plan completion, even if the Court were able to determine the present value as of the Plan's effective date. This Court rejects this argument as well.

5. <u>Is the Plan Fair and Equitable?</u>

What constitutes a fair and equitable plan under Subchapter V is specifically set forth in 11 U.S.C. §1191(c). *See, Pearl Res.*, 622 B.R. at 267 (Courts considering whether a Subchapter V plan is fair and equitable have consistently and exclusively relied on the express, statutory language of §1191(c)); *In re Channel Clarity Holdings LLC,* No. 21BK07972, 2022 WL 3710602, at *15 (Bankr. N.D. Ill. July 19, 2022). Under § 1191(c)(2), a "plan is fair and equitable if it (i) proposes to commit all of the debtor's disposable income for the entire term of the plan to making plan payments (or the equivalent thereof); (ii) the debtor is able to make the payments under the plan or there is a reasonable likelihood that the debtor will be able to make the payments; and (iii) the plan provides appropriate remedies, which could include the liquidation of nonexempt assets, to protect creditors if the payments are not made." *Pearl Res.,* 662 B.R. at 267.

The Objecting Creditors argue in their post-hearing brief that the Plan is not fair and equitable because the Plan is likely to fail. The management and operating agreements expire during the term of the Plan and, consequently, the income projected after the expiration of the agreements will not be available to fund the Plan. This is not an argument addressing why the Plan is not fair and equitable. Rather, this argument goes to whether the Plan is feasible, which the Court addressed in Section B.3. Here, however, the Court finds that the Plan commits all of Debtors'

disposable income for the entire term of the Plan to making Plan payments, that Debtors are able to make these Plan payments, and the Plan provides sufficient remedies upon default. For these reasons, this Court finds that the Plan is fair and equitable as required in §1191(b).

III.

CONCLUSION

For the reasons set forth in this Opinion, this Court finds that: (i) the Plan does not meet the "best-interest-of-the-creditors" test and (ii) the Plan unfairly discriminates against Carl Jennings. For these reasons, this Court DENIES confirmation of Debtors' Second Amended Plan. All other objections to the Plan are OVERRULED.

**Signed on October 12, 2022**



/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**