UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

LAPEER AVIATION, INC., *et al*.          Case No. 21-31500
                                          Jointly Administered
         Debtors.                         Chapter 11
_____/           Hon. Joel D. Applebaum

## OPINION AND ORDER DENYING MOTION TO HOLD CHRISTOPHER LEWIS IN CONTEMPT AND AWARD SANCTIONS

The matter before the Court is the Motion for Entry of Order Holding Christopher Lewis in Contempt and Awarding Sanctions ("Motion") filed by Lapeer Aviation, Inc. and CG Acquisitions, LLC's ("Debtors"). For the reasons set forth below, the Motion is DENIED.

I.

FACTUAL BACKGROUND

On or about May 21, 2021, CG Acquisitions L.L.C. and Gene Kopczyk filed a case entitled *CG Acquisitions L.L.C. and Gene Kopczyk v. Christopher Lewis* in the Lapeer County Circuit Court (Case No. 21-054668-CB). That lawsuit alleged four counts: Count I – Claim for Relief under § 450.4515 of the Michigan Limited Liability Company Act (seeking dissolution and liquidation of CG by a member); Count II - Dissolution under § 450.4802 of the Michigan Limited Liability

Company Act (seeking dissolution of CG by either a member or a third-party); Count III - Breach of Duties under Section 450.1541a of the Michigan Business Corporation Act (for breach of statutory duties to LAI); and Count IV – Declaratory Judgment (that Gene Kopczyk is the sole member of CG). In June 2021, Lewis filed an Answer to the Complaint in which he consented to the dissolution of CG. Although all parties agreed to the dissolution of CG, no order was entered memorializing that agreement. That agreement would have resolved Count II.[1]

Subsequently, on November 5, 2021 and November 9, 2021, Lapeer Aviation, Inc. and CG Acquisitions, LLC (collectively "Debtors"), respectively, filed their separate Chapter 11 petitions under Title 11, Chapter 11, subchapter V of the United States Bankruptcy Code. On January 11, 2022, the Court entered an order allowing for the joint administration of the two cases. As a result of the bankruptcy filing, the Lapeer County Circuit Court case was administratively closed.

On January 26, 2022, this Court determined that Christopher Lewis was a 50% member of CG until August 26, 2020, but after August 26, 2020, Christopher

---

[1] It appears that this agreement would have also resolved Count I, but that is not at issue in this motion.

Lewis held no membership interest in CG.[2] (Docket No. 61, Bench Opinion, Transcript pp. 28-38). This Court's ruling is currently on appeal to the United States District Court.

On November 4, 2022, this Court entered an order confirming the Third Amended Chapter 11 Plan (the "Plan") filed by Lapeer Aviation, Inc. ("LAI") and CG Acquisitions, LLC ("CG") (the "Confirmation Order"). The Plan contains language which, among other things: (a) requires the Debtors to pursue certain causes of action (identified in exhibit A) and have any settlements approved by the Court (Plan, ¶ 4.1.1); (b) allows defendants in state court actions "to assert any defenses or any other responsive pleading not subject to discharge or otherwise determined in this case, which they may have against the claims made." (Plan, ¶ 5.12); (c) issues an express injunction which prohibits, at the very least, "commencing or continuing any action in any matter, in any place that . . .is not consistent with the provisions of this Plan." (Plan, ¶ 6.4); and (d) grants Debtors the right and authority to commence, continue, amend or compromise all Causes of Action (Plan, ¶ 13.13).

---

[2] Pursuant to a settlement agreement, Christopher Lewis assigned his membership interests Carl Jennings. As a result of this assignment, Carl Jennings merely holds Lewis's right to receive distributions from CG. Lewis' membership and voting interest ceased upon the transfer. MCL § 450.4505(4). (Docket No. 61, Bench Opinion, Transcript pp. 28-38).

The Confirmation Order granted Lewis the right to assert any defenses or responses permitted under non-bankruptcy laws and rules and required CG to obtain this Court's approval before abandoning any state claims. The Confirmation Order states, in part:

> IT IS FURTHER ORDERED that with respect to Section 13.13 of the Third Amended Plan, *nothing in Section 13.13 of the Plan grants or denies standing or alters the rights or authority which may be held by the defendants or other parties to those actions or potential actions that may allow them to commence, continue, amend or compromise causes of action, or to assert defenses or responses to the commencement, continuation, amendment or compromise of actions or potential actions under applicable non-bankruptcy laws and rules*; provided however that, for the avoidance of doubt, defendants and other parties are precluded from taking any action which involves a claim subject to discharge or an issue that was otherwise decided in this case.

(Docket No. 273) (emphasis added).

On February 16, 2023, Plaintiffs CG and Gene Kopczyk filed a motion to reopen the Lapeer County Circuit Court case.

On March 9, 2023, Christopher Lewis filed a Concurrence in Plaintiff's Request to Dissolve Plaintiff, CG Acquisitions, LLC.

On March 13, 2023, the Lapeer County Circuit Court reopened the case pursuant to Plaintiffs' request.

On March 14, 2023, Christopher Lewis filed a "Motion for Partial Summary Disposition as to Count II of Plaintiff's Complaint Seeking Dissolution of Plaintiff, CG Acquisitions, LLC (As Consented to by All Parties)".

Between March 22, 2023 and March 30, 2023, the parties exchanged correspondence regarding the propriety of Lewis' motion for summary disposition. The parties were unable to resolve this matter.

On April 6, 2023, Debtors' counsel filed this Motion for Entry of Order Holding Christopher Lewis in Contempt and Awarding Sanctions. The Motion alleges that Lewis is in violation of the automatic stay and the injunction set forth in the Plan because he filed a Motion for Summary Disposition attempting to dissolve CG. The prayer for relief in the instant motion is very limited, and seeks *only* that this Court hold Christopher Lewis in contempt and award sanctions in some as yet undetermined amount.

On April 17, 2023, Lewis filed a response to Debtors' Motion arguing that he is neither in violation of the automatic stay nor in violation of the injunction set forth in the Plan.

On May 8, 2023, Debtors' counsel filed a Reply Brief in Support of Motion for Entry of Order Holding Christopher Lewis in Contempt and Awarding Sanctions (Dkt. No. 340).

On May 10, 2023, a hearing was held on the Motion, following which the Court took this matter under advisement.

II.

ANALYSIS

Upon the filing of a bankruptcy case, creditors and other entities are prohibited from collecting on their debts during the pendency of the bankruptcy by the automatic stay. The automatic stay is imposed by 11 U.S.C. § 362 which prohibits, in relevant part:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> \* \* \*
>
> (6)    any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> \* \* \*

Although there are exceptions to the stay, exceptions are to be narrowly construed in order to give the stay broad effect. *In re Harris*, 310 B.R. 395, 398 (Bankr. E.D. Wisc. 2004).[3]

---

[3] The automatic stay continues in effect even after plan confirmation under § 362(c)(2).

In this case, creditors and other entities are also subject to an injunction set forth in ¶ 6.4 the Plan. Paragraph 6.4 provides in part: "all Persons and Entities that have held, currently hold, or may hold Claims, Interests, Causes of Action or liabilities that are treated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors and Reorganized Debtors or their property on account of any such *discharged* Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights: . . . (v) commencing or continuing any action in any manner, in any place that does not comply, or is not consistent, with the provisions of this Plan." (emphasis added). The Plan in this case was non-consensual and was confirmed under § 1191(b) of the Code. Accordingly, a discharge of debts does not occur until "after completion by the debtor of all payments" due under the Plan. 11 U.S.C. § 1192.

Because CG is a corporate debtor, recovery for violation of the automatic stay proceeds under a civil contempt theory.[4] *See, In re GYPC, Inc*. 634 B.R. 983, 989 (Bankr. S.D. Ohio 2021)(corporate entities did not have private right of action for violation of stay, and had to proceed on civil contempt theory); *In re Nicole Gas Prod., Ltd*, 916 F.3d 566, 579 (6th Cir. 1989)(violating the automatic stay constitutes civil contempt). This is also true for violations of plan injunctions. *In*

---

[4] The treatment of sanctions for violations of the automatic stay in cases involving *individual* debtors proceeds under 11 U.S.C. § 362(k) rather than under civil contempt.

re City of Detroit, 614 B.R. 255, 264 (Bankr. E.D. Mich. 2020). These civil contempt powers "flow from Bankruptcy Code § 105(a) and the inherent power of a court to enforce compliance with its lawful orders." *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted).

The requirements necessary for holding a party in contempt were modified by the Supreme Court in *Taggart v. Lorenzen,* 139 S.Ct. 1795 (2019). Under *Taggart*, a court may find a party in civil contempt if: (1) the party violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct — i.e., no objectively reasonable basis for concluding that the party's conduct might be lawful. *Id.* at 1799; *City of Detroit*, 614 B.R. at 265; *Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*, 612 B.R. 372, 382 (6th Cir. BAP 2020).

In this case, this Court finds that Lewis' actions do not satisfy the elements of *Taggart* because, at the very least, Lewis' actions do not meet the standard of "no fair ground of doubt as to whether the order barred [his] conduct." The language in the Plan explicitly allows defendants in state court actions "to assert any defenses or any other responsive pleading not subject to discharge or otherwise determined in this case, which they may have against the claims made." (Plan, ¶

5.12). Similarly, the Confirmation Order grants Lewis, as a state court action defendant, the right to assert any defenses or responses permitted under non-bankruptcy laws and rules and requires CG to obtain this Court's approval before abandoning any state law claims. Prior to filing CG's bankruptcy petition, CG and Kopczyk filed a Complaint in the Lapeer County Circuit seeking various forms of relief, including the dissolution of CG (Count II). Plaintiffs and Lewis agreed to that dissolution, although they never memorialized that agreement with a court order. The Lapeer County Circuit Court case was then closed during the pendency of the bankruptcy.

Although this Court's opinion on the effect of Lewis' assignment of his membership interests may have altered Plaintiffs' desire to have CG dissolved, the Lapeer County Circuit Court case was reopened *in its entirety*, including the counts seeking dissolution of CG. Perhaps Plaintiffs could have sought to dismiss the entire state court case against Lewis, dismiss just the dissolution counts, or hold the dissolution counts in abeyance pending a decision from the United States District Court on the appeal of this Court's order regarding Lewis' membership interests in CG, but Plaintiffs took no action with respect to Count II or any of the counts alleged in the Lapeer Court Circuit Court action. Based on the agreed language in the Plan and the Confirmation Order, Lewis, as a defendant in the Lapeer Court Circuit Court action, was entitled to assert any "defenses or responses." Under

these circumstances, this Court simply cannot find that there is "no fair ground of doubt" as to whether the Plan or the Confirmation Order bars Lewis' conduct. Consequently, the Court cannot hold Lewis in contempt.

Debtors argue that Lewis' motion is clearly an end-run around this Court's order holding that, after he assigned all of his membership interests, Lewis was no longer a member of CG. In their Reply Brief and during oral argument, Debtors further argue that CG was not the party seeking dissolution, that Plaintiffs did not tell the Lapeer Court Circuit Court that the automatic stay was lifted, among other responses. But Debtors' arguments either miss the point or raise additional questions that support this Court's finding that a "fair ground of doubt" exists.

For example, in their Reply Brief, Debtors "acknowledge that paragraph 24 of the state court complaint at issue references both CG and Mr. Kopczyk in stating that 'CG and Kopczyk incorporate paragraphs 1-23 as paragraph 24 as though fully stated herein,' [but] this does not mean that the Count II claim was brought by CG." Reply Brief, p. 2. During oral argument, Debtors argued that only Kopczyk, and not CG, sought dissolution of CG. Maybe that is correct, but based upon the language used by Plaintiffs in the complaint, there is at least a fair ground of doubt as to whether Debtors' assertion is legally or factually correct. Similarly, Debtors claim that Plaintiffs never argued to the Lapeer County Circuit Court that the automatic stay was lifted. But this, too, misses the point. As quoted above, the

Plan allows Lewis "to assert any defenses or any other responsive pleading not subject to discharge or otherwise determined in this case, which they may have against the claims made." (Plan, ¶ 5.12). Discharge of claims in this case does not occur until after completion of Plan payments. The Confirmation Order similarly allows Lewis "to commence, continue, amend or compromise causes of action, or to assert defenses or responses to the commencement, continuation, amendment or compromise of actions or potential actions under applicable non-bankruptcy laws and rules." In light of this broad language in the Plan and Confirmation Order, the ultimate issue is not whether Plaintiffs made various assertions about the automatic stay in the Lapeer County Circuit Court. Rather, the question is whether Lewis acted in accordance with the rights consensually granted to him in the Plan and Confirmation Order. As a defendant in the Lapeer Court Circuit Court action, Lewis asserted defenses that he *may* possess and/or made responses that he *may* have been entitled to assert, assertions that the Plan and Confirmation Order *may* have allowed. The Court expresses no opinion as to the merits of Lewis' assertions, or the propriety of any action that Plaintiffs might take in the Lapeer County Circuit Court action in response. This Court simply holds that there is a fair ground of doubt as to whether Lewis' actions violated the terms of the Plan and the Confirmation Order.

## ORDER

Because Debtors only seek a ruling that Lewis should be sanctioned for contempt, and the Court finds that there is a fair ground of doubt as to whether Lewis' conduct is contemptuous and sanctionable,

IT IS HEREBY ORDERED that Debtors' Motion for Entry of Order Holding Christopher Lewis in Contempt and Awarding Sanctions is DENIED.

**Signed on May 11, 2023**

/s/ Joel D. Applebaum
**Joel D. Applebaum
United States Bankruptcy Judge**